*1249 OPINION
By the Court,
Gibbons, J.:
Respondent Daniel J. Burcham was charged with felony driving under the influence (DUI) pursuant to NRS 484.3795(l)(a) and (b) following an accident that caused the death of another driver. The State appeals the district court’s order granting Burcham’s pretrial habeas petition and dismissing the felony DUI charge.
*1250 We primarily consider whether the definition of “under the influence,” set forth in this court’s 1987 decision, Cotter v. State,[1] applies to the current version of NRS 484.3795(l)(a). In 1995, the Legislature amended NRS 484.3795, delineating the various acts that may constitute violations of the statute into separate paragraphs.[2] Although we acknowledge that these amendments impact the analysis in Cotter with respect to NRS 484.3795(1), we nevertheless conclude that the standard set forth in Cotter is still appropriate for determining whether a defendant is “under the influence.” To find someone “under the influence,” a fact-finder must determine that the driver was impaired “to a degree which renders him incapable of driving safely.’ ’[3] We further conclude that because the State’s burden at a grand jury proceeding is to present slight or marginal evidence to support a reasonable inference that the defendant committed the crime charged,[4] the State presented sufficient evidence that Burcham was under the influence of alcohol.
Second, we consider whether the State must use expert testimony or explain retrograde extrapolation to a grand jury when a charge under NRS 484.3795(l)(b) is based on evidence that the defendant’s blood-alcohol concentration (BAC) was tested twice within a reasonable time after the collision, was lower in the second test, and was below 0.08. We conclude that expert testimony regarding retrograde extrapolation or an explanation by the State is not required in grand jury proceedings under these circumstances.
Therefore, we reverse the district court’s order granting Burcham’s pretrial petition for a writ of habeas corpus on the felony DUI charge, and we remand this matter for further proceedings.

FACTS AND PROCEEDINGS

Sometime between 6:15 a.m. and 6:30 a.m. on April 30, 2006, Burcham rear-ended Dylan Whisman’s car, which had been stopped at a traffic light for at least one minute. An expert in accident reconstruction testified that Burcham was traveling 56 to 69 miles per hour in a 45-mile-per-hour zone when his truck pushed Whisman’s car through the intersection and into a ditch. Whisman’s car then erupted into flames. The coroner investigator testified that the cause of death was related to the collision, but she was unable to determine at the scene whether the specific cause was blunt force trauma or fire.
*1251 At the hospital, Burcham admitted drinking one beer at approximately 8 p.m. the night before the collision, and a Nevada Highway Patrol trooper observed that Burcham’s eyes were bloodshot and watery and that his breath smelled of alcohol. Blood tests confirmed that Burcham had alcohol in his blood. At 7:15 a.m., his BAC was 0.07, and at 8:22 a.m., it was 0.04.
The grand jury indicted Burcham for violations of NRS 484.3795 (DUI causing death)[5] based on two theories: (1) that Burcham was under the influence of alcohol, pursuant to subsection (l)(a), when he collided with Whisman’s car and (2) that Burcham was driving with a BAC of 0.08 or more, pursuant to subsection (l)(b).
Burcham filed a pretrial petition for a writ of habeas corpus, arguing that the State produced insufficient evidence to establish probable cause as to the felony DUI charge.[6] In particular, Burcham argued that, as to the theory based on NRS 484.3795(l)(a), the State had failed to establish probable cause that he was under the influence at the time of the collision. As to the theory based on NRS 484.3795(l)(b), Burcham argued that the State had failed to establish probable cause that his BAC was 0.08 or higher at the time of the collision because the State’s theory required expert testimony regarding retrograde extrapolation.
In response, the State asserted that sufficient evidence supported the indictment for felony DUI because only slight impairment is required for a defendant to be “under the influence” pursuant to NRS 484.3795(l)(a). The State also argued that “simple arithmetic’ ’ supported the inference, based on the two blood tests taken after the collision, that Burcham’s BAC at the time of the collision was 0.085 and therefore expert testimony was not required on this issue for the State to meet its burden before the grand jury for purposes of NRS 484.3795(l)(b).[7] Burcham responded that the State offered no evidence regarding retrograde extrapolation and, therefore, did not meet its burden of proof.
*1252 The district court granted the petition and dismissed the charge of DUI causing death for two reasons. First, the district court concluded that the term “under the influence” as set forth in NRS 484.3795(l)(a) has the meaning ascribed to it in Cotter and that the State had failed to present evidence to establish “a connection between [Burcham’s] intoxication and his inability to exercise physical control over his vehicle.’ ’ Second, the district court ruled that the State was required to present expert testimony on retrograde extrapolation in order to support its theory that, based on the BAC in the two blood samples taken from Burcham after the collision, Burcham had a BAC of 0.08 or higher at the time of the collision for purposes of NRS 484.3795(l)(b). According to the district court, the process of retrograde extrapolation “is more complex than the State would have this [c]ourt believe,” and the State was required to present some evidence to explain the process. Therefore, the district court concluded that the State had failed to present sufficient evidence to support a reasonable inference that Burcham violated NRS 484.3795(l)(b). The State appealed the district court’s order granting the writ petition as to the felony DUI charge.[8]

DISCUSSION

NRS 484.3795(1)(a): “under the influence”

The district court held that Cotter states the correct interpretation of “under the influence,” requiring a connection between the defendant’s “intoxication and his ability to exercise physical control over his vehicle.” The State initially argued that NRS 484.3795(l)(a) and Cotter require that it show Burcham’s driving was only slightly impacted by the ingestion of alcohol to establish that he was under the influence of alcohol.[9] But the State conceded in its reply brief and oral argument that Cotter is probably still the correct standard. Thus, the State and Burcham essentially agree that Cotter still requires that the State prove that the alcohol impaired Burcham to a degree that rendered him incapable of driving safely. The issue remaining for this court is whether the Cotter holding is still sound considering the subsequent amendments to NRS 484.3795.
*1253 This court reviews questions of law and statutory interpretation de novo, and we only look beyond the plain language of the statute if that language is ambiguous or its plain meaning clearly was not intended.[10] Therefore, where the legislative intent is clear, we must effectuate that intent.[11] “Additionally, statutory construction should always avoid an absurd result.”[12]
NRS 484.3795(1) sets forth six alternative means of violating the statute. The three alternatives set forth in subsections (l)(a)-(c) are relevant to this case. Under paragraph (a), a person must be “under the influence of intoxicating liquor,” whereas under paragraphs (b) and (c), a person must have a BAC of 0.08 or more, under different circumstances. Thus, paragraphs (b) and (c) establish per se violations based on a specific BAC regardless of whether the person is impaired, whereas paragraph (a) does not require a specific BAC.[13]
This court addressed the meaning of “under the influence” in a prior version of NRS 484.3795 in Cotter, a case involving a defendant convicted of DUI causing substantial bodily harm based on being under the influence of a controlled substance.[14] When Cotter was decided in 1987, NRS 484.3795(1) set forth the offense and alternative means of committing it in a lengthy single sentence:
Any person who, while under the influence of intoxicating liquor or with a 0.10 percent or more by weight of alcohol in his blood, or while under the influence of a controlled substance, or under the combined influence of intoxicating liquor and a controlled substance, or any person who inhales, ingests, applies or otherwise uses any chemical, poison or organic solvent, or any compound or combination of any of these, to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle, does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, any person other than himself, shall be punished by imprisonment ....
*1254 (Emphasis added.) Based on this provision, the State argued that the phrase “to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle” applied only to the clause immediately preceding it, dealing with “any chemical, poison or organic solvent, or any compound or combination of any of these,” and not to the clause under which the defendant had been convicted — being under the influence of a controlled substance.[15] Consistent with that interpretation, the State insisted that “any person who drives a vehicle under the influence of a controlled substance, and while doing so, commits any act which causes death or substantial bodily harm, is guilty of a felony DUI.”[16]
This court rejected that interpretation, explaining that a ‘ ‘plain reading and logical application” of the provision “suggests that more than this is required, one must be under the influence of the controlled substance to a degree which renders him incapable of driving safely or exercising actual physical control of the vehicle.”[17] The court concluded that the State’s interpretation would “create[ ] anomalous prospects” by, for example, making “felons of drivers on lawfully prescribed medications irrespective of whether the medication had any causal relationship to the event leading to the death or injury of another.”[18] Thus, this court concluded that the statute “embraces only those individuals who ingest substances mentioned in the statute to a degree that renders them incapable of safely driving or exercising actual physical control of the vehicle.”[19] The Cotter court went on to explain that with the exception of a per se violation of NRS 484.3795, whether a driver is under the influence will “always be a question of fact, to be considered in the light of such variable circumstances as the individual’s resistance to the substance, the amount ingested and the type and time of ingestion.’ ’[20] The issue here is similar but involves interpreting the amended statute.
In 1995, the Legislature amended NRS 484.3795, primarily to include a per se violation based on a prohibited BAC within two *1255 hours of driving and an affirmative defense to that provision based on consumption of alcohol after driving.[21] But at the same time, the Legislature placed the alternative means of violating the statute into separate paragraphs and included the “to a degree” language only in paragraph (e), which deals with the ingestion of chemicals, poisons, or organic solvents.[22] As a result, NRS 484.3795(1) is currently structured in relevant part to provide that a person who:
(a) Is under the influence of intoxicating liquor; [or]
(b) Has a concentration of alcohol of 0.08 or more in his blood or breath; [or]
(e) Inhales, ingests, applies or otherwise uses any chemical, poison or organic solvent, or any compound or combination of any of these, to a degree which renders him incapable of safely driving or exercising actual physical control of a vehicle; . . .
and does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle ... if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, a person other than himself, is guilty of a category B felony ....
(Emphasis added.) The legislative history behind this amendment is silent regarding why the Legislature broke the subsection into multiple paragraphs, but the overall intent of the law was “to crack down on drunk driving.”[23]
Because the “to a degree” language is now found in paragraph (e), regarding chemicals, poisons, and organic solvents, and is separated from the other acts by semicolons,[24] the 1995 amendments have some impact on the reasoning employed in Cotter. But the basic premise in Cotter remains sound — the phrase “under the influence” requires impairment, resulting in the inability to drive safely.

Plain meaning

“Under the influence” has a commonly understood, plain meaning consistent with the Cotter interpretation. As the United *1256 States Court of Appeals for the Third Circuit has explained, for over half a century, courts have recognized that ‘ ‘under the influence” means “driving in a state of intoxication that lessens a person’s normal ability for clarity and control.”[25] The focus of this language in drunk driving statutes is the effect of the alcohol, rather than the amount of alcohol consumed.[26] Similarly, the Supreme Court of Hawaii rejected defining “under the influence” as any slight level of intoxication.[27] The plain meaning of ‘ ‘under the influence” focuses on the influence of alcohol on a person such that they are unable to drive safely, which is consistent with the legislative intent and public policy behind drunk driving statutes. As this court has explained in addressing the important interest of traffic safety, “the State has a legitimate interest in preventing people from driving after ingesting any substance that will render them incapable of driving safely.’ ’[28] Consistent with that interest, the legislative intent behind the 1995 amendments to NRS 484.3795 was to “crack down on drunk driving.”[29]
Given the plain meaning of “under the influence,” we conclude that the Cotter standard still applies to NRS 484.3795(l)(a). To find a defendant was “under the influence,” the fact-finder must determine that the alcohol affected the defendant “to a degree that renders them incapable of safely driving or exercising actual physical control of the vehicle.’ ’[30] This ensures that there is a causal relationship between the influence of the drugs or alcohol and the event causing death or injury to the victim.[31] This remains a question of fact to be considered in light of the totality of the circumstances.[32] Because the 1995 amendments structurally changed *1257 NRS 484.3795, our affirmation of the Cotter standard rests on the plain meaning of “under the influence” as well as the legislative intent and public policy to keep intoxicated drivers off the roads.

Due process

We also conclude that the plain meaning expressed in Cotter satisfies due process concerns. A statute is void for vagueness and therefore violates the Due Process Clause “if it fails to sufficiently define a criminal offense such that a person of ordinary intelligence would be unable to understand what conduct the statute prohibits.”[33] Because the phrase “under the influence” is commonly understood to mean being under the effect of alcohol to the extent that one cannot drive safely, it puts the ordinary person on notice that driving in such a condition is prohibited.[34] Therefore NRS 484.3795(l)(a)’s plain meaning satisfies due process.

Sufficiency of the evidence

We conclude that the district court properly applied the plain meaning of “under the influence” and ruled that the State must prove “a connection” between the intoxication and the defendant’s inability to drive safely. However, the district court concluded that the State did not offer sufficient evidence to the grand jury to support Burcham’s indictment for being “under the influence.” We disagree.
In reviewing a district court’s order granting a pretrial petition for writ of habeas corpus for lack of probable cause, this court determines ‘ ‘whether all of the evidence received at the grand jury proceeding establishes probable cause to believe that an offense has been committed and that the defendant ] committed it.”[35] This court will not overturn the district court’s order unless the district court committed substantial error.[36]
The grand jury does not determine guilt or innocence, but instead decides whether probable cause supports the indictment.[37] The grand jury has a duty to “weigh all evidence submitted to them.”[38] NRS 172.155(1) requires that the grand jury, prior to in- *1258 dieting the accused, find probable cause to believe that an offense has been committed and that the person charged committed the crime. Further, “[t]he finding of probable cause may be based on slight, even ‘marginal’ evidence.”[39] Therefore, the State’s burden is not to present to the grand jury evidence that establishes guilt beyond a reasonable doubt, but “enough evidence to support a reasonable inference” that the defendant committed the crime charged.[40] “[T]he State is not required to negate all inferences which might explain his conduct, but only to present enough evidence to support a reasonable inference that the accused committed the offense.”[41]
We conclude that the State presented sufficient evidence to support a reasonable inference that Burcham was driving under the influence and caused Whisman’s death. A witness to the collision testified that she and Whisman, who was stopped in the lane next to her, had been stopped at the red light for at least one minute. Burcham, who was speeding, failed to stop at the red light and rear-ended Whisman, pushing his car through the intersection and into a ditch. Burcham smelled of alcohol, his eyes were bloodshot and watery, he admitted to drinking the night before, and he had a BAC of 0.07 within an hour of the collision. Based on the foregoing, the grand jury could reasonably have inferred that Burcham was under the influence to the degree that the alcohol made him incapable of driving safely. Thus, we conclude that the district court substantially erred by dismissing Burcham’s indictment for being “under the influence” pursuant to NRS 484.3795(l)(a).

NRS 484.3795(l)(b): BAC of 0.08 or more

The district court ruled that the State presented no evidence to establish probable cause that Burcham had a BAC of 0.08 or more while driving, pursuant to NRS 484.3795(l)(b). The State contends that circumstantial evidence, based on “simple math,” supported a reasonable inference that Burcham’s BAC was 0.08 or more at the time of the collision and that expert testimony is not required at a grand jury proceeding. Burcham contends that the State was required to present expert testimony in support of its theory that he was driving with a BAC of 0.08 or more at the time the accident occurred. For the reasons set forth below, we reject Burcham’s contention that the State was required to present expert testimony on this issue at the grand jury proceeding. We further conclude that the grand jury could have reasonably inferred that *1259 Burcham’s BAC was 0.08 or higher when he collided with Whisman’s car.

Retrograde extrapolation and expert testimony in grand jury proceedings

In Anderson v. State, this court recognized the use of retrograde extrapolation to estimate a defendant’s BAC at the time of an accident.[42] In that case, a forensic chemist testified that the standard metabolism rate of alcohol is approximately 0.02 percent per hour, and he extrapolated backwards to estimate that the defendant’s BAC was 0.128 when he was driving.[43] This court, however, has not addressed whether the State must present expert testimony or explain the extrapolation technique to a grand jury. We conclude that the presentation of such evidence is unnecessary in grand jury proceedings in light of the State’s evidentiary burden.
Burcham erroneously relies on a Texas Court of Criminal Appeals case, Mata v. State,[44] to support his argument that the State may not rely on retrograde extrapolation unless it presents an expert to testify on the technique. Burcham contends that Mata supports his proposition that expert testimony is required here because of the complexity of applying retrograde extrapolation in any given case. Specifically, Burcham points out that several factors affect the accuracy of retrograde extrapolation including: the length of time between drinking and the test; the number of tests and the time between each; and characteristics of the defendant such as age, weight, tolerance, the amount of alcohol consumed, and whether the person had eaten.[45]
We conclude that Mata is unpersuasive here because the Mata court addressed whether expert testimony on retrograde extrapolation was reliable in a jury trial,[46] not whether expert testimony should be required when the State relies on retrograde extrapolation in grand jury proceedings. Mata is also distinguishable because the nature of the information regarding the BAC tests were different from the case at bar. In Mata, the defendant took two BAC tests minutes apart, over two hours after he was driving.[47] Because these tests were so close in time, the tests only served as a single test for determining whether Mata was still absorbing alcohol, meaning his BAC was rising, or was eliminating alcohol, *1260 meaning his BAC was dropping.[48] This contributed to the difficulty in estimating what his BAC was when he was driving. The Mata court held that an expert could create a reliable BAC estimation based on two BAC tests, taken a reasonable time after driving if a reasonable time elapsed between the tests, even with minimal knowledge about the defendant’s personal characteristics.[49] In this case, Burcham took one BAC test about one hour after the collision and another about one hour later, which was lower. Thus, in this case, it was easier to infer that Burcham’s BAC was dropping and to estimate that his BAC could have been 0.08 when he was driving.
This court has deemed one officer’s opinion testimony as sufficient to support an indictment. In Zampanti v. Sheriff,[50] this court held that a police officer’s opinion that what the defendant possessed was marijuana was sufficient, by itself, to establish probable cause. In that case, the defendant represented to the officer that the substance in his possession was marijuana.[51] But this court held that even if that admission was not considered, the officer’s testimony that the defendant’s vehicle smelled of marijuana and the substance looked like marijuana was sufficient to support the indictment.[52] Although expert testimony generally would be required at trial to prove beyond a reasonable doubt that the substance was marijuana, we concluded that such testimony was not required at the grand jury.[53]
Similarly, in this case, the two BAC tests suggested that Burcham’s BAC was dropping and that it could have therefore been 0.08 when he was driving. We conclude that because the State’s burden at a grand jury proceeding is to present slight or marginal evidence to support an inference that the accused committed the crime charged, specific scientific evidence and expert testimony concerning retrograde extrapolation are not required.[54] Such a requirement would place a tremendous burden on the State to produce, during grand jury proceedings, evidence addressing the many factors involved with retrograde extrapolation, as discussed above.[55] *1261 We further conclude that the State is not required to provide the grand jury with an instruction regarding retrograde extrapolation. We now address whether the State offered sufficient evidence to support Burcham’s indictment for driving with a BAC of 0.08 or higher.

Sufficiency of the evidence

The State presented two BAC tests, the first of which was taken about an hour after the collision. The tests were taken an hour apart and revealed that Burcham’s BAC was decreasing and was 0.07 within one hour of the collision. We conclude that the grand jury reasonably could have inferred that Burcham’s BAC was 0.08 or higher when he collided with Whisman’s car. It is the grand jury’s duty to weigh the evidence, and it could have found the State’s evidence regarding Burcham’s BAC credible enough to support an inference warranting indictment. Thus, the district court erred when it dismissed Burcham’s indictment pursuant to NRS 484.3795(l)(b).

CONCLUSION

For the reasons set forth above, we conclude that Cotter[56] expresses the proper standard for NRS 484.3795(l)(a) in requiring that the State establish that the defendant was impaired to such a degree that he was incapable of driving safely. We conclude that the State presented sufficient evidence to support a reasonable inference that Burcham was under the influence when he collided with Whisman’s car.
Regarding a per se violation of NRS 484.3795(l)(b) or (c), we conclude that, in a grand jury proceeding, the State need not provide expert testimony or its own explanation about retrograde extrapolation when the defendant’s BAC is lower than the legal limit, if the BAC was taken twice, within a reasonable amount of time after driving, and there was a reasonable amount of time between the tests. The grand jury could have reasonably inferred from Burcham’s BACs that his BAC was 0.08 or more at the time of the collision. Thus, sufficient evidence supports the grand jury’s indictment based on the theory that he violated NRS 484.3795(l)(b). Therefore, we conclude that the district court erred when it partially granted Burcham’s writ petition and dismissed the charge for violation of NRS 484.3795. Accordingly, we reverse the judgment of the district court and remand this matter to the district court for proceedings consistent with this opinion.
Maupin, C. J., Hardesty and Parraguirre, JJ., concur.

 103 Nev. 303, 738 P.2d 506 (1987).

 1995 Nev. Stat., ch. 188, § 1, at 312.

 Cotter, 103 Nev. at 305, 738 P.2d at 508 (internal quotation marks omitted).

 Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980).

 The grand jury also indicted Burcham for violating NRS 484.377(5) (felony reckless driving) and NRS 200.070 (involuntary manslaughter), neither of which are at issue in this appeal.

 Burcham also argued in the petition that he should have been charged with vehicular manslaughter rather than involuntary manslaughter. Because the district court disagreed and denied the petition as to the involuntary manslaughter charge, that charge is not at issue in this appeal.

 The State explained its “simple arithmetic” as follows: Because Burcham’s BAC at 7:15 a.m. showed a concentration of 0.07, and his test approximately one hour later at 8:22 a.m. showed a concentration of 0.04, his BAC was dissipating at a rate of 0.03 per hour. Therefore, as the first BAC was taken approximately half an hour after the collision, then his BAC at the time of the collision could be computed by adding one-half of 0.03, or 0.015, to 0.07, to determine that his BAC at the time of the collision was 0.085.

 The State argues on appeal that the instruction it gave the grand jury defining “under the influence” was proper. Because the State raises this for the first time on appeal, we do not address the issue. State v. Taylor, 114 Nev. 1071, 1077, 968 P.2d 315, 320 (1998).

The State contended that Etcheverry v. State, 107 Nev. 782, 821 P.2d 350 (1991), supports this conclusion that a slight impact is enough. We conclude that Etcheveny is distinguishable from the issue here because the primary issue there was the effect of a purported superseding cause and because the defendant per se violated NRS 484.3795. See id. at 783-84, 821 P.2d at 350-51. Thus, the definition of “under the influence” was not at issue in Etcheverry.

 State v. Quinn, 117 Nev. 709, 712-13, 30 P.3d 1117, 1120 (2001).

 Sheriff v. Luqman, 101 Nev. 149, 155, 697 P.2d 107, 111 (1985).

 State v. Webster, 102 Nev. 450, 453, 726 P.2d 831, 833 (1986).

 See Williams v. State, 118 Nev. 536, 548-49, 50 P.3d 1116, 1124 (2002) (explaining that NRS 484.3795(l)(f), which applies to a person who has a proNbited level of a controlled substance in his or her blood, does not require impairment and that NRS 484.3795(l)(d), which applies to a person who is under the influence of a controlled substance, does not require a specific level of a controlled substance).

 103 Nev. 303, 738 P.2d 506 (1987).

 Id. at 305, 738 P.2d at 508.

 Id.

 Id. (internal quotation marks omitted); accord Anderson v. State, 109 Nev. 1129, 1134 & n.l, 865 P.2d 318, 320 n.l, 321 (1993) (holding the following jury instruction a proper statement of law; “A person is under the influence of intoxicating liquor when as a result of drinking such liquor his physical or mental abilities are impaired to such a degree that renders him incapable of safely driving.”).

 Cotter, 103 Nev. at 305-06, 738 P.2d at 508.

 Id. at 306, 738 P.2d at 508 (internal quotation marks omitted).

 Id.

 Hearing on S.B. 273 Before the Senate Transportation Comm., 68th Leg. (Nev., April 20, 1995).

 1995 Nev. Stat., ch. 188, § 1, at 312.

 Hearing on S.B. 273 Before the Senate Transportation Comm., 68th Leg. (Nev., April 20, 1995).

 NRS 484.3795(l)(e).

 Government of Virgin Islands v. Steven, 134 F.3d 526, 528 (3d Cir. 1998) (holding that given this commonly understood meaning, the Virgin Islands’ statute was not void for vagueness); accord State v. Cummings, 63 P.3d 1109, 1116 (Haw. 2003) (Moon, C. L, dissenting) (arguing that a charge of driving under the influence was not deficient because it lacked the additional phrase, “in an amount sufficient to impair the person’s normal mental faculties or ability to care for oneself and guard against casualty”).

 Steven, 134 F.3d at 528.

 State v. Mata, 789 P.2d 1122, 1128 (Haw. 1990).

 Sereika v. State, 114 Nev. 142, 149, 955 P.2d 175, 180 (1998); accord Steven, 134 F.3d at 528 (holding that the general purpose of drunk driving statutes is to keep drivers off the road who have diminished capacity as a result of ingesting alcohol).

 Hearing on S.B. 273 Before the Senate Transportation Comm., 68th Leg. (Nev., April 20, 1995).

 Cotter v. State, 103 Nev. 303, 306, 738 P.2d 506, 508 (1987) (internal quotations omitted).

 See id. at 305-06, 738 P.2d at 508.

 Id. at 306, 738 P.2d at 508.

 Nelson v. State, 123 Nev. 534, 540, 170 P.3d 517, 522 (2007).

 Government of Virgin Islands v. Steven, 134 F.3d 526, 528 (3d Cir. 1998); see State v. Cummings, 63 P.3d 1109, 1116-18 (Haw. 2003) (Moon, C. J., dissenting).

 Sherijf v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980).

 Sheriff v. Provenza, 91 Nev. 346, 347, 630 P.2d 265, 265 (1981).

 Hodes, 96 Nev. at 186, 606 P.2d at 180.

 NRS 172.145(1).

 Hodes, 96 Nev. at 186, 606 P.2d at 180 (quoting Perkins v. Sheriff, 92 Nev. 180, 181, 547 P.2d 312, 312 (1976)).

 Id.

 Kinsey v. Sherijf, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971).

 109 Nev. 1129, 1132, 865 P.2d318, 319-20 (1993).

 Id.

 46 S.W.3d 902 (Tex. Crim. App. 2001), overruled on other grounds by Bagheri v. State, 87 S.W.3d 657, 660-61 (Tex. App. 2002).

 Id. at 916.

 Id. at 915-16.

 Id. at 904, 905.

 Id.

 Id. at 916.

 86 Nev. 651, 652-53, 473 P.2d 386, 386-87 (1970).

 Id. at 652, 473 P.2d at 386.

 Id. at 653, 473 P.2d at 387.

 Id. at 653, 473 P.2d at 386-87.

 See Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980).

 Mata v. State, 46 S.W.3d 902, 916 (Tex. Crim. App. 2001), overruled on other grounds by Bagheri v. State, 87 S.W.3d 657, 660-61 (Tex. App. 2002).

 103 Nev. 303, 738 P.2d 506 (1987).