An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

YVONNE LOGAN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59590

**FILED**

MAY 09 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of exploitation of an older or vulnerable person as provided in NRS 200.5092. Second Judicial District Court, Washoe County; Steven R. Kosach, Judge.

Appellant Yvonne Logan and her stepfather, Harold Walker, resided in a property that they owned together in joint tenancy (White Fir property). Logan also owned another property that Walker helped her to refinance after the passing of her husband (Enchanted Valley property). Subsequent to the refinance, Walker's name appeared on the deed of trust. Walker also owned a large certificate of deposit (CD), but because of his advanced age, he placed Logan's name on the account in the event that something were to happen to him.

The significant events in this case occurred after Walker decided to undergo knee replacement surgery. Walker met with Logan and a loan officer to discuss paying off one property and using the rents from that property to pay the mortgage on the other property. It was decided that Logan would use the funds in the CD to pay off the mortgage

13-13738

on the Enchanted Valley property and use the rents from that property to pay the mortgage on the White Fir property.[1]

Shortly thereafter, Logan removed the funds from the jointly held CD and placed the funds in an account solely in her name. After using a majority of the funds to pay off the mortgage on the Enchanted Valley property, Logan failed to return the unused funds to an account jointly held by both she and Walker. Later, while Walker was in the hospital recovering from his knee replacement and surgery on a broken ankle, an injury sustained while in the hospital and under heavy narcotics, Logan was present when Walker deeded his interest in the White Fir property to Logan. Upon discovery of the transfer of his interest in the property, Walker reported Logan's actions to the police. At trial, Walker testified he had no recollection of agreeing to give his interest in the White Fir property to Logan or signing the deed in the hospital.

Following a four-day jury trial, Logan was found guilty of two counts of exploitation of an older or vulnerable person. Her convictions stemmed from the conversion of the CD and Walker's interest in the White Fir property. Logan now appeals.

---

[1]At trial, it was disputed whether Logan had the authority to use the entire $167,000 balance of the CD. Walker testified that Logan was only to use $110,000 in order to pay off the Enchanted Valley mortgage. In contrast, Logan testified that she also obtained Walker's permission to use additional funds from the CD to make certain repairs on the Enchanted Valley property.

The issues on appeal are: (1) whether NRS 200.5092(2) is unconstitutionally vague because "normal influence" of one family member over another is not sufficiently defined in the context of "undue influence" for the purposes of establishing exploitation and (2) if NRS 200.5092(2) is determined to be constitutional, whether there is sufficient evidence to sustain the conviction.[2]

## Constitutionality of NRS 200.5092

As a preliminary matter, although the majority of Logan's arguments focus on the alleged unconstitutionality of NRS 200.5092(2)(a), we do not need to reach that issue. "It is well settled . . . that we should avoid considering the constitutionality of a statute unless it is absolutely necessary to do so." Sheriff v. Andrews, 128 Nev. ___, ___, 286 P.3d 262, 263 (2012) (citing Anthony Lee R., A Minor v. State, 113 Nev. 1406, 1417-18 n.6, 952 P.2d 1, 8 n.6 (1997) (refusing to reach a statute's constitutionality because principles of statutory construction resolved the issues)). Furthermore, in a case where multiple theories of guilt are presented to the jury and one is determined to be improper, we use a harmless-error analysis and may affirm the conviction if there is a "valid

---

[2]Logan also argues that: (1) the district court erred in permitting the State to question Logan as to why the other witnesses did not tell the truth in their testimony; (2) the district court abused its discretion in precluding Logan from questioning Walker's attorney about the settlement amount requested in Walker's civil action against Logan; and (3) cumulative error warrants reversal of the judgment of conviction. We have reviewed these remaining contentions and conclude that they are without merit.

alternative basis upon which to rest a verdict." Cortinas v. State, 124 Nev. 1013, 1025-26, 195 P.3d 315, 323 (2008). "[S]o long as the error at issue does not categorically 'vitiat[e] all the jury's findings,'" the error may be deemed harmless. Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (alteration in original) (quoting Neder v. United States, 527 U.S. 1, 11 (1999)).

In this case, the State presented two theories of guilt for the jury's consideration. One theory, based on NRS 200.5092(2)(a), is the basis for Logan's constitutional challenge—that Logan obtained control of Walker's property through undue influence. The second theory, based on NRS 200.5092(2)(b), is that Logan simply converted Walker's property.[3] Even if the first theory of liability was unconstitutionally vague, the second theory of liability, which is not unconstitutionally vague, could be a valid basis for the jury's verdict convicting Logan pursuant to NRS 200.5092(2). See Cortinas, 124 Nev. at 1025-26, 195 P.3d at 323. Because

---

[3]In her opening brief, Logan argues that the unconstitutional portions of NRS 200.5092(2) deal with the vagueness of the words "undue influence" and "normal influence," neither of which are found in subsection (b). Only after the State submitted its opposition did Logan then contend that the unconstitutionally vague portions of the statute included the words "trust and confidence," as they appear prior to the subsections, which could then be applied to the conversion described in subsection (b). Because the conversion subsection was raised for the first time in Logan's reply brief, we conclude that any challenge to the constitutionality of subsection (b) is waived. See Weaver v. State, Dep't of Motor Vehicles, 121 Nev. 494, 502, 117 P.3d 193, 198–99 (2005) (stating that this court need not consider issues raised for the first time in an appellant's reply brief); NRAP 28(c).

the second theory of liability is valid, we decline to reach the constitutionality of NRS 200.5092(2). See Andrews, 128 Nev. at ___, 286 P.3d at 263.

Sufficiency of the evidence

Logan contends that we should apply the rule of lenity and interpret NRS 200.5092(2) to require a defendant to use "criminal means[,] such as obtaining money under false pretenses, coercion, forgery, stalking or the like," in order to be convicted of exploitation under NRS 200.5092(2) (emphasis omitted).[4] She then states that because there was no evidence of the required criminal activity, the State did not prove each element of the crime and therefore the conviction cannot stand. The State responds by arguing that such an interpretation is unreasonable because the Legislature would not have enacted a new statute to criminalize actions that were already prohibited.

Standard of review

In order to determine "whether a verdict was based on sufficient evidence to meet due process requirements, [we] will inquire 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

---

[4]The rule of lenity requires that "'ambiguities in criminal statutes be liberally interpreted in the accused's favor.'" State v. Lucero, 127 Nev. ___, ___, 249 P.3d 1226, 1230 (2011) (quoting Moore v. State, 122 Nev. 27, 32, 126 P.3d 508, 511 (2006)). This rule, however, only applies to statutes "when other statutory interpretation methods, including the plain language, legislative history, reason, and public policy, have failed to resolve a penal statute's ambiguity." Id. NRS 200.5092(2) can be fully interpreted by considering its plain meaning. Therefore, we need not apply the rule of lenity in this case.

elements of the crime beyond a reasonable doubt.'" Mitchell v. State, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (alteration in original) (quoting Koza v. State, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984)); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979). We will not "reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact." Mitchell, 124 Nev. at 816, 192 P.3d at 727.

### There was sufficient evidence to support Logan's conviction

The interpretation that Logan proposes that this court adopt is unreasonable and would create an absurd result. See Sheriff v. Burcham, 124 Nev. 1247, 1253, 198 P.3d 326, 329 (2008) (noting that an absurd result should always be avoided). Logan contends that in order to satisfy the elements of the crime of exploitation, as defined in NRS 200.5092(2), the defendant must first be shown to have committed a separate crime. That is to say, Logan contends it is not enough for the state to show that the defendant has acted in a way to "[o]btain control, through deception, intimidation or undue influence . . . or . . . [to] [c]onvert money, assets or property of the older person or vulnerable person with the intention of permanently depriving [them] of the ownership, use, benefit or possession of his or her money, assets or property." NRS 200.5092(2).

Logan's interpretation, requiring that a defendant be first found guilty of some other theft crime before being able to be convicted of exploitation, ignores the plain language of the statute and creates an absurd result. See Burcham, 124 Nev. at 1253, 198 P.3d at 329. Further, it is presumed that by enacting a new statute, the Legislature seeks to substantially change the law. Cf. State v. Weddell, 118 Nev. 206, 213, 43 P.3d 987, 991 (2002) ("When a statute is repealed, [the court] presume[s]

that the legislature intended a substantial change in the law."). At the time that the Legislature enacted NRS 200.5092(2) to prevent elder abuse, theft crimes were already in effect. Thus, by giving the statute Logan's interpretation, no new conduct would be prohibited and, as a result, no substantial change to the law would have occurred. We therefore review Logan's verdict to determine whether substantial evidence supported the State's second theory of guilt.

In order to prove Logan guilty under its conversion theory, the State was required to prove the six elements of the crime, as listed in Jury Instruction No. 25:

1.  That Harold Walker was, at the time of the offense, an older person or a vulnerable person;

2.  that Yvonne Logan did obtain the trust and confidence of Harold Walker;

3.  that Yvonne Logan did any ... act to convert[ ]

4.  Harold Walker's money, assets or property

5.  with the intention of permanently depriving Harold Walker of the ownership, use, benefit or possession of his money, assets or property[ ]

6.  in Washoe County, Nevada.

Clearly, a rational trier of fact could have easily found beyond a reasonable doubt that the State had proved that: (1) Walker was an older person, as anyone 60 years of age or older is considered an "[o]lder person," NRS 200.5092(5); (2) Logan had Walker's trust and confidence, as both Logan and Walker testified that they had a very close and loving relationship up until the time that Walker went to live with his son; (3) the property illegally obtained by Logan from Walker was in Washoe

County, as the two properties are in Reno, and the CD was held in a Reno branch of Umpqua Bank; and (4) the White Fir property and the CD were money, assets, or property that originally belonged to Walker.

The only two elements that are at issue are (1) whether Logan "did any act to obtain control, through deception, intimidation or undue influence AND/OR did any act to convert" and (2) whether she did so "with the intention of permanently depriving Harold Walker of the ownership, use, benefit or possession of his money, assets or property."

First, as to conversion, the jury heard evidence that Walker's entire interest in the White Fir property was transferred to Logan, such that Walker retained no control over an asset that was originally his. Further, the evidence demonstrated that Logan withdrew the entire $167,000 balance of Walker's CD, spent the majority of it on the Enchanted Valley property, and then deposited the remaining amount into an account bearing only her name. Thus, Walker also lost all control of the CD's remaining funds. This evidence is sufficient to support the element of conversion.

Turning now to the final element—the intent to permanently deprive. As to the White Fir property, the jury could have rationally found that the fact the deed transferred all of Walker's interest to Logan was circumstantial evidence of Logan's intent to permanently deprive Walker of his interest in the property. See Bolden v. State, 121 Nev. 908, 912, 124 P.3d 191, 194 (2005) (concluding that a conviction may be rendered on solely circumstantial evidence), overruled on other grounds by Cortinas, 124 Nev. 1013, 195 P.3d 315. The intent element of proving permanent deprivation was demonstrated by evidence that Logan sought Walker's cooperation with the property interest transfer while Walker was on heavy

narcotic pain medication that likely caused him to be temporarily unable to make significant legal decisions. Additionally, evidence was presented that Logan was good friends with the loan officer—implying that it was possible that the loan officer assisted Logan in her plan to convert Walker's interest in the White Fir property. It was within the purview of the jury to weigh the evidence in a way that favored Walker. See Estes v. State, 122 Nev. 1123, 1144, 146 P.3d 1114, 1128 (2006) (it is within the province of the jury to weigh the evidence and make credibility determinations).

Similarly, Logan's decision to place the remainder of the CD, after paying off the Enchanted Valley property, into a bank account bearing only her name could also be circumstantial evidence of her intent to deprive Walker of those assets because there were still several available accounts bearing both Walker and Logan's names into which she could have deposited the remaining funds. See Bolden, 121 Nev. at 912, 124 P.3d at 194. Further, if the jury weighed Walker's testimony higher than Logan's and found that Walker never intended that Logan use more than $110,000 to pay off the Enchanted Valley property, her use of excess amounts exhibits an intent to permanently deprive Walker of his money. Thus, weighing the evidence in a light most favorable to the prosecution, there was sufficient evidence presented that would allow a jury to find Logan guilty. See Mitchell, 124 Nev. at 816, 192 P.3d at 727.

Independently, Logan's actions may not have risen to the level of criminal conduct but, looking at all of the transactions as a whole, a rational trier of fact could have found the essential elements of the crime

SUPREME COURT
OF
NEVADA

(O) 1947A

beyond a reasonable doubt. Consequently, we conclude that there was sufficient evidence to support the verdict.

We therefore,

ORDER the judgment of the district court AFFIRMED.[5]

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[5]We have reviewed Logan's remaining contentions and determine that they are without merit.

cc: Second Judicial District Court Dept. 8
Richard F. Cornell
Attorney General/Carson City
Washoe County District Attorney
Washoe District Court Clerk