**130 Nev., Advance Opinion 56**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
TROY RICHARD WHITE,
Respondent.

No. 62890

**FILED**

JUL 10 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting defendant's pretrial petition for a writ of habeas corpus, dismissing a burglary charge. Eighth Judicial District Court, Clark County; Elizabeth Goff Gonzalez, Judge.

*Affirmed.*

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens and Jonathan E. VanBoskerck, Chief Deputy District Attorneys, and Ryan MacDonald and Michelle Sudano, Deputy District Attorneys, Clark County,
for Appellant.

Philip J. Kohn, Public Defender, and Scott L. Coffee and David Lopez-Negrete, Deputy Public Defenders, Clark County,
for Respondent.

---

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

12/17/14: Corrected per letter to publishers. CT

14-22351

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we address for the first time whether a person can burglarize his or her own home. We conclude that a person cannot commit burglary of a home when he or she has an absolute right to enter the home.

### FACTS AND PROCEDURAL HISTORY

Troy White and Echo Lucas were married and lived together with five children in a house owned by White. In early June 2012, after having marital issues, the couple separated. White offered to move out of their residence. The couple agreed that Lucas would live in the residence with the children during the week, and White would live there with the children over the weekend. White retained his house key to use on the weekends. In late June, Lucas' new boyfriend, Joseph Averman, moved into the residence to live there with Lucas.

Averman testified that White would usually come to the residence between two and three o'clock in the afternoon on Fridays. White remained at the residence through the weekends, leaving on Sundays. During the weekends, Averman and Lucas would leave the residence and stay elsewhere until Sunday. Not surprisingly, White was unhappy that Lucas started dating Averman and began repeatedly harassing her with phone calls, voicemails, and text messages. He even threatened Averman, stating that "if you don't stay away, I'm going to . . . kill you."

On Friday July 27, 2012, around two o'clock in the morning, White began banging on Lucas' bedroom window. Lucas called him and told him to stop because the kids were asleep in the house. White

SUPREME COURT
OF
NEVADA

(O) 1947A

returned to the house later that day around noon, entered the house with his key, and asked to speak to Lucas. She told White that he was not supposed to be at the residence at that time and they could talk later. However, she eventually agreed to talk to him for five minutes. Lucas and White went into the spare bedroom to talk while Averman tended to one of the children across the hall in the master bedroom. Averman then heard Lucas say, "[White], no, please don't, and stop." Averman, aware of prior abuse between Lucas and White, went to the room and saw Lucas attempt to leave the room before being pulled back into the room. White then pushed Lucas against the wall and shot her in the stomach. White turned toward Averman and shot him once in the right arm and twice in the abdomen. White then told Averman that "I told you this was going to happen." White fled the scene in Lucas' vehicle. Averman eventually recovered from his injuries, but Lucas died as a result of her gunshot wound.

The State filed a criminal complaint against White for (1) burglary while in possession of a firearm, (2) murder with use of a deadly weapon, (3) attempted murder with use of a deadly weapon, (4) carrying a concealed firearm, and (5) ten counts of child abuse, neglect, or endangerment. At the preliminary hearing, the justice court bound over White on all the charges and consolidated the child abuse charges. However, White argued that he could not be charged with burglary of his own residence. The justice court instructed the parties to file a petition with the district court in order to settle this issue.

White then filed a pretrial petition for writ of habeas corpus arguing that a person cannot be charged with burglary of his or her own residence. The State filed a response arguing that Nevada's burglary

statute clearly and unambiguously allows a person to be charged with burglarizing his or her own home. The district court ultimately granted White's petition, dismissing the charge for burglary while in possession of firearm, and finding that (1) at common law one could not burglarize his or her own residence; and (2) one cannot legally burglarize his or her own residence "where there is no legal impediment such as a TPO, a restraining order of some sort . . . that would otherwise limit the ability of an owner to access their own property." The State now appeals.

## DISCUSSION

*A person cannot commit burglary of a home when he or she has an absolute right to enter the home*

We have not previously addressed whether a person can burglarize his or her own home. We review questions of law and statutory interpretation de novo. *Sheriff, Clark Cnty. v. Burcham*, 124 Nev. 1247, 1253, 198 P.3d 326, 329 (2008). "When interpreting a statute, legislative intent is the controlling factor." *State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011) (internal quotation marks omitted). To determine legislative intent of a statute, this court will first look at its plain language. *Id.* "But when the statutory language lends itself to two or more reasonable interpretations, the statute is ambiguous, and [this court] may then look beyond the statute in determining legislative intent." *Id.* (internal quotation marks omitted). When interpreting an ambiguous statute, "we look to the legislative history and construe the statute in a manner that is consistent with reason and public policy." *Id.* "Additionally, statutory construction should always avoid an absurd result." *Burcham*, 124 Nev. at 1253, 198 P.3d at 329 (internal quotation marks omitted).

At common law, "burglary was generally defined as the breaking and entering of the dwelling of another in the nighttime with intent to commit a felony." *People v. Gauze*, 542 P.2d 1365, 1366 (Cal. 1975) (emphasis and internal quotation marks omitted). However, Nevada's current burglary statute, NRS 205.060(1), states that "a person who, by day or night, enters any house, . . . or other building, . . . with the intent to commit grand or petit larceny, assault or battery on any person or any felony, . . . is guilty of burglary."

We conclude that Nevada's burglary statute is subject to two reasonable interpretations: (1) the Legislature intended to revoke the common law rule that burglary requires entry into the building of another, or (2) the Legislature incorporated the common law requirement by failing to expressly include one's own home as a possible place of burglary. *See Gauze*, 542 P.2d at 1366.[1] In order to resolve the two possible interpretations, we consider the purposes of common law burglary, the legislative intent of Nevada's burglary statute, and California's approach to whether one can burglarize his or her own home.[2]

---

[1]California's burglary statute is nearly identical to Nevada's, and that state's legislature has also similarly expanded the structures that can be burglarized and eliminated the breaking requirement. *Gauze*, 542 P.2d at 1366. The California Supreme Court explained that the California Legislature's expansion of burglary could be interpreted in the same two ways. *Id.*

[2]Even though the State argues that the plain language of Nevada's burglary statute clearly allows a person to burglarize a house that he or she owns and has an absolute right to enter, we hold that this interpretation could create absurd results and would not promote the policy behind common law burglary and its modern codification, NRS 205.060. *See Gauze*, 542 P.2d at 1369 (noting that a person could

*continued on next page . . .*

The common law, "so far as it is not repugnant to or inconsistent with, the constitution or laws of the United States, or the laws of the territory of Nevada, shall be the rule of decision in all courts of this territory . . . [and] should remain in force until repealed by the legislature." *Vansickle v. Haines*, 7 Nev. 249, 285 (1872) (internal quotation marks omitted). Common law burglary was a crime against "habitation and occupancy" and "clearly sought to protect the right to peacefully enjoy one's own home free of invasion." *Gauze*, 542 P.2d at 1366 (internal quotation marks omitted) (noting that "a person's home was truly his castle"). Further, the common law was clear that a person could not be convicted of burglary for entering his own home with the intent to commit a felony. *Id.* "This rule applied not only to sole owners of homes, but also to joint occupants," thus "[t]he important factor was occupancy, rather than ownership." *Id.*

The Nevada Legislature has moved away from the common law definition of burglary in several respects. The current statute only requires an entry with the intent to commit certain enumerated offenses. *State v. Adams*, 94 Nev. 503, 505, 581 P.2d 868, 869 (1978). Breaking is no longer an essential element of burglary. *Id.* Further, the entry does not need to be a forcible entry, nor does the burglary need to occur at night. *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1113 (2002); NRS 205.060(1). Also, consent to the entry is not a defense to burglary if

---

*. . . continued*

potentially commit burglary by walking into his house with the intent to forge a check, or with the intent to administer heroin to himself).

the person "acquired the entry with felonious intent." *Barrett v. State*, 105 Nev. 361, 364, 775 P.2d 1276, 1277 (1989). While these changes certainly expanded the common law definition of burglary, the common law notion that burglary law is designed to protect a possessory or occupancy right in property remains in effect.

The basic policies underlying burglary statutes also support the conclusion that a person cannot burglarize his or her own home when he or she has an absolute right to enter the home. Burglary statutes "are based primarily upon a recognition of the dangers to personal safety . . . that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." *Gauze*, 542 P.2d at 1368 (internal quotation marks omitted). The laws are not intended necessarily to deter the trespass or the intended crimes, but "[are] aimed at the danger caused by the unauthorized entry itself." *Id.* "The statute protects against intruders into indoor areas, not persons committing crimes in their own homes." *Id.* at 1369 (emphasis omitted).

We agree with the analysis of the California Supreme Court in *Gauze*, which relied upon these policies to reach the conclusion that a person with an absolute right to enter a structure cannot commit burglary of that structure. *Id.* at 1367. In *Gauze*, the defendant entered an apartment that he rented with two other roommates and shot one of his roommates. *Id.* at 1365-66. The court concluded that the defendant did not commit burglary because he "invaded no possessory right of habitation." *Id.* at 1367. He had an absolute right to enter the apartment and could not be refused admission to his apartment or ejected from the

apartment after entry.[3] *Id.* The court explained this conclusion by stating "[i]n contrast to the usual burglary situation, no danger arises from the mere entry of a person into his own home, no matter what his intent is . . . no emotional distress is suffered, no panic is engendered, and no violence necessarily erupts merely because he walks into his house." *Gauze*, 542 P.2d at 1368.

Based on this analysis, we conclude that while the Legislature has expanded common law burglary in several respects, it has at least retained the notion that: (1) burglary law is designed to protect a possessory or occupancy right in property, and (2) one cannot burglarize his own home so long as he has an absolute right to enter the home. Thus, while ownership may be one factor to consider, the appropriate question is whether the alleged burglar has an absolute, unconditional right to enter the home.

*The district court did not err in granting White's pretrial petition for a writ of habeas corpus*

Applying our holding to the facts of this case, we now consider whether the district court erred by granting White's pretrial petition for a

---

[3]There are common situations when a person does not have an absolute right to enter a structure. For example, a husband does not have a right to enter the house he owns with his wife if the wife obtained a district court order granting her possession of the house. *People v. Smith*, 48 Cal. Rptr. 3d 378, 384 (Ct. App. 2006). Also, while customers have a limited right to enter a store for lawful purposes, persons who possess the intent to commit a felony therein are not entitled to enter. *People v. Barry*, 29 P. 1026, 1026-27 (Cal. 1892). Lastly, a landlord does not have an absolute right to enter a property he or she owns because the landlord conveys the right of possession to the tenant. *State v. Machan*, 322 P.3d 655, 659 (Utah 2013).

writ of habeas corpus. When reviewing a district court's grant of a pretrial petition for writ of habeas corpus, we must "determine whether all of the evidence received at the preliminary hearing . . . establishes probable cause to believe that an offense has been committed and that the accused committed it." *Kinsey v. Sheriff, Washoe Cnty.*, 87 Nev. 361, 363, 487 P.2d 340, 341 (1971). "The finding of probable cause may be based on slight, even marginal evidence," *Sheriff, Washoe Cnty. v. Hodes*, 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (internal quotation marks omitted), and we will uphold the district court's determination of factual sufficiency absent substantial error. *Burcham*, 124 Nev. at 1257, 198 P.3d at 332.

Under the facts of this case, we conclude that the district court did not err in dismissing the charge against White for burglary while in possession of a firearm because he had an absolute right to enter the residence. Even though he orally agreed to stay elsewhere during the week, he still maintained an absolute right to enter the residence and did not forfeit any possessory right he had in it. Further, White could not be ejected or prevented from entering the residence, especially since he still retained his keys to the house and entered the house on a weekly basis to stay with his children on weekends. This conclusion supports the general burglary policy to protect against intruders, but not against persons committing crimes in their own homes, such as White. Thus, the State failed to provide slight or marginal evidence that White's entry into his residence invaded another's possessory right of habitation.

## CONCLUSION

We conclude that the Legislature has not eliminated the common law notion that a person with an absolute unconditional right to enter a structure cannot burglarize that structure. As such, we conclude

that the district court did not err in granting White's petition for a writ of habeas corpus. Accordingly, we affirm the order of the district court.[4]

_____, C.J.
Gibbons

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[4]We have considered the parties' remaining arguments and conclude they are without merit.