RICK RAY DIXON, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 17522

June 12, 1987                                    737 P.2d 1162

*Robison, Lyle, Belaustegui & Robb* and *David C. McElhinney,*
Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,*
District Attorney, and *Gary H. Hatlestad,* Deputy District Attor-
ney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

On September 6, 1985, a Nevada highway patrolman received a report that a green pickup truck was being driven erratically on U.S. 395. Shortly thereafter, a green pickup truck barely missed striking the trooper's patrol car, which was parked off the roadway with its overhead lights on. The truck was weaving within both traffic lanes, going sixty-five miles per hour in a fifty mile per hour zone. The trooper stopped the vehicle; its driver, appellant Dixon, stumbled and almost fell when he got out. Dixon swayed from side to side while standing, and walked "as if he were on a tightrope." There was an odor of alcohol on his breath and person, his speech was slurred and slow, he appeared confused, and his eyes were watery, bloodshot and glassy. When asked if he had been drinking, Dixon said he had drunk three beers. The trooper then administered field sobriety tests. Concluding that Dixon failed them, he made an arrest and for the first time read Dixon his *Miranda* rights. A breath test showed .21 percent blood alcohol concentration; a second test showed no result. Dixon had two prior convictions in California for driving while intoxicated, in 1979 and 1982. Therefore, his offense was raised to a felony. All of Dixon's challenges on appeal lack merit; accordingly, we affirm.

First, Dixon asserts that probable cause for arrest is required before an officer may administer field sobriety tests. We reject that contention. Society's interest in preserving the public safety allows an officer making a "stop" on reasonable suspicion of criminal behavior to make reasonable inquiry into suspicious circumstances and conduct a limited search to verify the presence of a danger. *See generally* Terry v. Ohio, 392 U.S. 1 (1968). The danger posed by a speeding, wildly weaving truck with a glassy-eyed driver certainly justified the officer's actions in the instant case. We therefore hold that where an officer's reasonable suspicion that a driver is intoxicated justifies making a traffic stop, field sobriety tests may be administered. *Accord* Romo v. Municipality of Anchorage, 697 P.2d 1065 (Alaska Ct.App. 1985); State v. Moran, 667 P.2d 734 (Alaska Ct.App. 1983); State v. Superior Court, 718 P.2d 171 (Ariz. 1986); People v. Bennett, 189 Cal.Rptr. 77 (Ct.App. 1983); State v. Golden, 318 S.E.2d 693

(Ga.Ct.App. 1984); State v. Wyatt, 687 P.2d 544 (Hawaii 1984); State v. Niles, 703 P.2d 1030 (Or.Ct.App. 1985). Further, the facts presented in the case at bar constituted probable cause in any event.[1]

Second, Dixon challenges the trial court's failure to suppress evidence obtained without *Miranda* warnings. No such warning is necessary before reasonable questioning and administration of field sobriety tests at a normal roadside traffic stop. *See* Berkemer v. McCarty, 468 U.S. 420 (1984).

Nor were the breath tests tainted by prior violations of Dixon's constitutional rights; as has been demonstrated, no violation occurred.

Finally, the trial court did not err in refusing to suppress evidence of Dixon's two prior misdemeanor convictions on guilty pleas. Waiver forms adequately evidenced a knowing and voluntary waiver of rights, *see* Koenig v. State, 99 Nev. 780, 672 P.2d 37 (1983), and the third-offense felony provision is not an ex post facto law simply because Dixon's earlier convictions antedated its enactment. On the day Dixon elected to commit the offense here under consideration, reference to the statute would have indicated precisely the penalty he risked.[2]

There being no basis for reversal, we affirm.

---

[1]Dixon claims the tests could not properly have been administered because, if the officer had probable cause to arrest, he was required to do so by NRS 171.1231. However, we note that an officer may be uncertain as to whether he had probable cause to make an arrest. The disposition of this appeal may, however, remove some uncertainty. We do not condone intentional violation of the statute.

[2]We reject out of hand the contention that Dixon was not adequately informed of the consequences of his California guilty pleas because he did not know Nevada would later make third offenses felonies. The "consequences" of which an accused must be informed do not include such collateral matters as this. United States v. Lambros, 544 F.2d 962 (8th Cir. 1976), *cert. denied,* 430 U.S. 930 (1977); *accord* Stocks v. Warden, 86 Nev. 758, 476 P.2d 469 (1970).