OPINION
 

 Per Curiam:
 

 Appellant James Larry Anderson appeals from a judgment of conviction, pursuant to a jury trial, of three counts of driving while under the influence of intoxicating liquor (“DUI”) which resulted in a multi-car accident and three deaths. We affirm the judgment of conviction.
 

 On August 25, 1990, at approximately 11:50 P.M., Anderson (driver) and a friend, John Edward Roy, Jr. (passenger), were
 
 *1131
 
 traveling at a high rate of speed on Highway 93 near Railroad Pass, Clark County, when Anderson approached an accident involving an overturned horse trailer. Mary Ann Roether testified that she was also traveling on Highway 93 that night and that Anderson’s automobile passed her traveling at approximately 100 miles per hour.
 

 Thomas Coonan, the driver of the Volkswagen that Anderson’s car struck, testified that as he drove northbound from Boulder City to Henderson, he noticed the horse trailer accident and stopped. In his rear view mirror Coonan saw Anderson’s car approaching and heard the carburetor “kick in” as Anderson accelerated.
 

 While patrolling Highway 93 near Railroad Pass Casino, Officer Eric Reinke, a Boulder City Police Officer, observed a Trans Am or Firebird traveling Highway 93 at about “100 miles per hour.” Shortly thereafter, Officer Reinke responded to the accident scene. Upon arrival, Officer Reinke realized that the same automobile that he had seen traveling at a high rate of speed was the same automobile involved in the second accident (the first being the horse trailer accident).
 

 Anderson testified at trial that prior to the accident, he had a problem with the accelerator sticking. Anderson explained that on August 25, 1990, he was at Pat K’s bar playing pool and that he did not remember having more than three or four beers. At approximately 11:30 P.M., Anderson decided to drive to the Lonesome Dove Bar with his friend, Roy. Anderson further testified that as he approached the accident scene, he attempted to downshift and he attempted to ease up on the accelerator and apply the brake, but the car continued to accelerate. At this point, Anderson told Roy that the accelerator was stuck and shifted the car into neutral. Anderson testified that after his car struck the first vehicle, he did not recall anything until he woke up later at the hospital.
 

 At trial, the State offered John Edward Roy, Jr.’s preliminary hearing testimony. The district court determined that Roy was unavailable for trial and allowed the State, over objection, to read his prior testimony to the jury. Roy testified that he and Anderson were together for a few hours prior to the accident and that during this time, Roy saw Anderson drink at least two or three beers. Roy also stated at the preliminary hearing that he did not recall Anderson saying anything about the throttle being stuck on his vehicle.
 

 Trooper William Marhold, a Nevada Highway Patrolman, testified that after investigating the accident scene, he went to the University Medical Center where Anderson had been taken. Trooper Marhold testified that when he initially came into contact
 
 *1132
 
 with Anderson, he “detected an odor, a rather strong odor of an intoxicating beverage on his breath.” Marhold advised Anderson of his
 
 Miranda
 
 rights and read him the Nevada Implied Consent warning. Anderson waived his rights and agreed to submit to a chemical test.
 

 Anderson told Trooper Marhold that at the time of the accident, Roy was driving the car. Roy, who was located in the same room lying on a nearby gurney, overheard Anderson’s comment and said, “I’m not taking this; I wasn’t driving, you murdered those people, not me.”
 

 On August 28, 1991, Trooper Garth Gardner, one of the highway patrolmen who investigated the accident, testified that he examined the scene of the accident and that there were no signs of either a skid or a sculf mark that would indicate that Anderson attempted to downshift his car while travelling at a high rate of speed. Trooper Gardner, along with a mechanic and two other highway patrolmen, examined Anderson’s automobile and noted that the gas pedal still moved freely and the carburetor linkage system appeared to be in “perfect working order.”
 

 Trooper Peter Hamilton, a highway patrolman and an expert in the field of accident reconstruction, testified that at the point where Anderson reached the stopped vehicles, he estimated Anderson’s speed to be between sixty-eight and eighty-one miles an hour. Additional calculations by Trooper Hamilton demonstrated that Anderson had ample time to stop his vehicle upon perceiving the pre-existing accident, even if he had been traveling at 100 miles per hour.
 

 Dan Berkabile, a forensic chemist, testified that he ran a blood alcohol test on Anderson’s blood sample for ethyl alcohol. Berka-bile testified that based on a standard metabolism rate of approximately 0.02 percent per hour, he extrapolated backwards to estimate Anderson’s blood alcohol level at the time of the accident to have been 0.128.
 

 At the conclusion of trial, a jury found Anderson guilty of all three DUI charges. The district court sentenced Anderson to three consecutive ten-year terms to be served in the Nevada State Prison and fined Anderson $6,000.00.
 

 On appeal, Anderson argues the following: (1) the district court erred in admitting Anderson’s statement because Anderson did not knowingly and intelligently waive his
 
 Miranda
 
 rights; (2) the district court erred in giving Instruction No. 5 because the instruction did not properly define the phrase “under the influence” as provided for by NRS 484.3795(1); and (3) there was insufficient evidence presented at trial to support Anderson’s convictions.
 

 First, Anderson contends that he did not knowingly and intelli
 
 *1133
 
 gently waive his
 
 Miranda
 
 rights, and thus, the district court erred in admitting his statements. Anderson argues that when Trooper Marhold interviewed him, Anderson was at the hospital being treated for head injuries as a result of the car accident and therefore could not have made a knowing and intelligent decision. Further, Anderson contends that at the time he gave his statement, he was twenty-six years old, had no prior experience in the criminal justice system, and had never been arrested for a DUI. Lastly, Anderson notes that he had a blood alcohol level of approximately 0.088 percent.
 

 In
 
 Miranda
 
 v.
 
 Arizona,
 
 the Supreme Court stated:
 

 If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. This Court has always set high standards of proof for the wavier of constitutional rights,
 
 Johnson
 
 v.
 
 Zerbst,
 
 304 U.S. 458 (1938), and we re-assert these standards as applied to in-custody interrogation.
 

 384 U.S. 436, 475 (1966). Moreover, the
 
 Miranda
 
 waiver’s validity must be determined in each case through an examination of the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused. Edwards v. Arizona, 451 U.S. 477 (1981);
 
 see also
 
 Rowbottom v. State, 105 Nev. 472, 779 P.2d 934 (1989).
 

 After reviewing the totality of the circumstances, we conclude that there was sufficient evidence to indicate that Anderson knowingly and intelligently waived his rights. Anderson received the
 
 Miranda
 
 warning, stated that he understood his rights, and agreed to talk about the incident. Anderson was responsive to the questions asked and appeared to be coherent and aware of the importance of his statements. Anderson failed to present any evidence that he was intoxicated or medicated to such an extent that he was unable to understand the meaning of his comments, thus rendering his statements inadmissible.
 
 See
 
 State v. Rivera, 733 P.2d 1090 (Ariz. 1987). While Anderson did argue that he was young, had no experience with the criminal justice system, and had been drinking prior to the interview, this evidence does not support his theory that he did not knowingly and intelligently waive his rights. We, therefore, conclude that the district court did not err in denying Anderson’s motion to suppress his statements.
 

 
 *1134
 
 Next, Anderson contends that the district court committed reversible error when it gave Instruction No. 5
 
 [1]
 
 because Instruction No. 5 does not properly define the phrase “under the influence” as provided for in NRS 484.3795. Anderson argues that his theory of defense was that his vehicle malfunctioned, and therefore, he was not exercising actual physical control of the vehicle when the accident occurred. Under Anderson’s theory, by approving an instruction that did not include the “exercising actual physical control of the vehicle” language, the district court improperly instructed the jury. A careful review of NRS 484.3795(1) reveals that the legislature used the disjunctive “or,” and not the conjunctive “and,” when it defined “under the influence,”
 
 [2]
 
 thereby requiring one or the other, but not necessarily both. After reviewing the statute and Instruction No. 5, we conclude that the district court properly instructed the jury on the meaning of NRS 484.3795(1).
 

 In addition, Anderson mischaracterizes the language found in NRS 484.3795(1) which relates to “exercising] actual physical control of a vehicle.” The statute, when it refers to ‘exercising of actual physical control of a vehicle,’ is not contemplating whether or not the defendant, due to a mechanical malfunction, lost control of his car, but rather, is referring to such factors as whether the individual is actually within the car, whether the engine has been started, whether the individual is awake, and whether the lights are on.
 
 See
 
 Isom v. State, 105 Nev. 391, 776 P.2d 543 (1989); Rogers v. State, 105 Nev. 230, 773 P.2d 1226 (1989). These factors address the issue of whether or not Anderson actually drove or exerted actual physical control of the vehicle so as to support the DUI charge; the statute does not involve the issue of whether Anderson lost control of the vehicle due to a mechanical malfunction. Under the testimony presented at trial, Anderson clearly drove the car and exerted actual physical control over the car. We, therefore, conclude that the district court did not err in approving an instruction that did not include the “exercising actual physical control of the vehicle” language of the statute from Instruction No. 5.
 

 Lastly, Anderson contends that the State presented insufficient
 
 *1135
 
 evidence to support the jury’s finding of guilt on three counts of DUI. Our review of the record reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.
 
 See
 
 Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980). In particular, we note that the jury could have reasonably inferred from the evidence presented that, at the time of the accident, Anderson operated his vehicle while under the influence of alcohol and that he had between 0.08 and 0.10 percent blood alcohol level in his system. A fireman testified that Anderson appeared to be intoxicated, dazed, and “real spacey.” Trooper Marhold also testified that when he contacted Anderson at the hospital after the accident, he detected a “strong odor of alcohol” emanating from Anderson. Although Anderson could not remember exactly how many beers he had consumed, he did admit to consuming at least three or four beers before the accident occurred. Furthermore, Dan Berkabile, a forensic chemist, testified that after testing the blood samples taken on the night in question, he extrapolated backwards to estimate Anderson’s blood alcohol level at the time of the accident; he estimated Anderson’s blood alcohol level to have been 0.128.
 

 Furthermore, we note that at the time of the accident, Anderson was driving his vehicle at a speed greater than was reasonably proper under the conditions and at a speed which was greater than that posted and which endangered the life, limb or property of another. At trial, the State presented the testimony of several witnesses who observed Anderson driving at speeds in excess of the posted speed limit. Further, Trooper Peter Hamilton, an expert in accident reconstruction, testified that he determined Anderson’s speed, at the point which Anderson reached the stopped vehicles, to be between sixty-eight and eighty-one miles per hour.
 

 We, therefore, conclude that the jury could have reasonably found from the evidence presented that Anderson committed the crime of DUI, that Anderson drove his vehicle while under the influence of an intoxicating liquor, that he drove his vehicle in excess of the posted speed limit, and that Anderson drove his vehicle at a speed unsafe for the conditions, all of which resulted in an accident in which three innocent victims were killed.
 

 We have considered Anderson’s other contentions and conclude that they also lack merit. For the reasons specified above, we affirm the judgment of conviction.
 

 [1]
 

 Instruction No. 5 states: “A person is under the influence of intoxicating liquor when as a result of drinking such liquor his physical or mental abilities are impaired to such a degree that renders him incapable of safely driving.”
 

 [2]
 

 NRS 484.3975(1) defines under the influence as “to a degree which renders him incapable of safely driving
 
 or
 
 exercising actual physical control of a vehicle.” (Emphasis added.)