# IN THE SUPREME COURT OF THE STATE OF NEVADA

DANIEL SHAWN SMITH,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79114

FILED

JUL 3 1 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S.Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of driving under the influence of alcohol and/or a prohibited substance with a prior felony driving under the influence conviction. Second Judicial District Court, Washoe County; Lynne K. Simons, Judge.

Appellant Daniel Shawn Smith argues that the district court (1) abused its discretion by denying his motion to exclude from evidence a retrograde extrapolation of his BAC; (2) erred by denying his motion to suppress without holding a proper suppression hearing; and (3) erred by determining that he was not in custody when he made statements to the first two responding officers. We disagree and affirm the judgment of conviction.

*The district court did not abuse its discretion by denying Smith's motion to exclude the retrograde extrapolation*

Smith argues that his retrograde extrapolation was more prejudicial than probative because the State's expert testified that he could not, as Smith phrased his question at trial, "demonstrate with any reasonable degree of scientific probability" that Smith's extrapolated BAC of .205 was exactly correct without knowing whether he had consumed alcohol immediately before being stopped, which could have caused his BAC to spike *after* he was stopped. Smith did not claim or offer evidence that he consumed alcohol immediately before being stopped.

20-28013

We review the admission of evidence for abuse of discretion. *Rodriguez v. State*, 128 Nev. 155, 164, 273 P.3d 845, 851 (2012). Relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.035(1). A retrograde extrapolation may be unfairly prejudicial if it "is likely to move a jury to declare guilt based solely on a reaction to the blood alcohol level and the very real devastation caused by drunk driving rather than proof that the defendant was driving while under the influence or with a prohibited blood alcohol level." *State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 934, 267 P.3d 777, 782 (2011).

In *Armstrong*, we provided 15 factors "relevant to achieving a sufficiently reliable retrograde extrapolation":

> (1) gender, (2) weight, (3) age, (4) height, (5) mental state, (6) the type and amount of food in the stomach, (7) type and amount of alcohol consumed, (8) when the last alcoholic drink was consumed, (9) drinking pattern at the relevant time, (10) elapsed time between the first and last drink consumed, (11) time elapsed between the last drink consumed and the blood draw, (12) the number of samples taken, (13) the length of time between the offense and the blood draws, (14) the average alcohol absorption rate, and (15) the average elimination rate. We observe . . . that not every personal fact about the defendant must be known to construct a reliable extrapolation, but rather those factors must be balanced.

*Id.* at 936, 267 P.3d at 783 (citation omitted).

In that case, the district court did not hear evidence that the extrapolation accounted for the defendant's age, height, mental state, or drinking pattern, or for the food in his stomach. *Id.* We explained that the fact that the extrapolation was based on only a single blood test was

SUPREME COURT
OF
NEVADA

(O) 1947A

2

"significant[ ]," and that "the significance of [the 15] factors is influenced by the number of blood alcohol tests." *Id.* Because the extrapolation was based on a single test, it was "difficult to determine whether [the defendant] was absorbing or eliminating alcohol at the time of the blood draw." *Id.* at 937, 267 P.3d at 783. The fact that the extrapolation may not have accounted for five of the factors thus meant that the risk of unfair prejudice "could [have] sufficiently outweighed" the extrapolation's probative value, so the district court did not manifestly abuse its discretion by excluding it. *Id.*

As we reasoned in *Armstrong*, the factors are relevant to the extrapolation's reliability because they help to determine whether the test subject was absorbing or eliminating alcohol at the time of the test. *Id.* at 936-37, 267 P.3d at 783. With only a single test, determining whether the subject was absorbing or eliminating during the test is difficult, so accounting for the factors is more necessary. *Id.* But with more tests, whether the subject was absorbing or eliminating becomes more apparent, and the factors become less necessary.

That is what the district court ultimately found here. After hearing expert testimony and reviewing *Armstrong*, the district court found that unlike the single test in *Armstrong*, Smith's *three* blood tests were sufficient to establish "absolutely linear elimination," so the factors were less necessary.

Although the expert testified at the hearing that he did not consider the factors except the number of samples taken and the length of time between the offense and the samples, he explained repeatedly that the other factors were unnecessary to his calculation because he had three samples, effectively corroborating our reasoning in *Armstrong*. He admitted that if Smith had consumed a large amount of alcohol immediately before

SUPREME COURT
OF
NEVADA

(O) 1947A

3

being stopped, which the eleventh factor ("time elapsed between the last drink consumed and the blood draw") addresses, the extrapolation could have been inaccurate and Smith's BAC when he was stopped could have been much lower because he would have still been absorbing that large amount of alcohol. But Smith never claimed and offered no evidence that he drank at any time other than before he left Sparks, approximately an hour's drive from where he was stopped. So that factor, although admittedly relevant, does not weigh against admissibility. *See State v. Burgess*, 5 A.3d 911, 917-18 (Vt. 2010) (rejecting the "chug-a-lug" theory as a basis for excluding blood-test results because the defendant offered no supporting evidence and told police that he had had only one beer).

Because the three tests were sufficient to establish a linear rate of elimination, the extrapolation was unlikely "to move [the] jury to declare guilt based solely on a reaction to the blood alcohol level and the very real devastation caused by drunk driving" but instead on "proof that the defendant was driving while under the influence or with a prohibited blood alcohol level." *Armstrong*, 127 Nev. at 934, 267 P.3d at 782. So the district court was correct that the risk of unfair prejudice did not substantially outweigh the extrapolation's considerable probative value.

*The State need not have presented witness testimony at the suppression hearing*

Smith next argues that because the State did not present witness testimony at the suppression hearing, the district court erred by denying in part his motion to suppress. We review a district court's legal conclusions on custody and interrogation issues de novo. *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

By denying Smith's motion to suppress his statements to the first two responding officers, the district court concluded that the State

SUPREME COURT
OF
NEVADA

(O) 1947A

proved by a preponderance of the evidence that those statements were admissible. Smith challenges that conclusion only insofar as he argues that as a matter of law, the State fails to meet its burden if it does not present witness testimony at a suppression hearing.[1] He cites *State v. Ruscetta*, 123 Nev. 299, 163 P.3d 451 (2007), for that proposition.

In *Ruscetta*, we vacated and remanded a district court's denial of a motion to suppress because the district court did not hold a proper suppression hearing or issue written findings. 123 Nev. at 305, 163 P.3d at 455. But the defendant in that case had waived his preliminary evidentiary hearing, and the only evidence before the district court at the suppression hearing was a police report. *Id.* at 301-02, 163 P.3d at 453. While we observed that the suppression hearing did not "include[ ] the examination of witnesses," we did not hold or even imply that a suppression hearing must include witness testimony. *Id.* at 304, 163 P.3d at 455.

And while Smith is correct that the district court here, as in *Ruscetta*, did not hear witnesses at the suppression hearing, it did hear *four* witnesses at the *preliminary* hearing and discussed their testimony in detail in its order disposing of the motion to suppress. The district court also reviewed the arresting trooper's body-cam footage, which the parties "extensively discussed" at the suppression hearing. So here, unlike in *Ruscetta*, the State was able to refer to evidence from the preliminary hearing, among other evidence, to prove that some of Smith's statements were admissible. Smith cites no authority supporting the proposition that

---

[1]He also notes that he was unable to develop adequately the two officers' intent in detaining him because the first officer did not testify at the preliminary hearing and the State did not produce the second officer's body-cam footage. But as we discuss below, his subjective intent argument is irrelevant to the *objective* question of custody.

the State must call witnesses back to repeat their testimony or reenter any other evidence at a suppression hearing. So the district court did not err by denying his motion without hearing witnesses at the suppression hearing.

*Smith was not in custody before the trooper told him to exit his truck*

Finally, Smith argues that the district court erroneously concluded that he was not in custody until the trooper told him to exit his truck and should have suppressed under *Miranda* the statements he made before that point. He argues that while caselaw is clear that a suspect is not in custody during a routine traffic stop, his was not routine. He argues that he was in custody from the moment he was stopped because the stop was part of an investigation of an earlier, unrelated hit-and-run incident.

*Miranda* warnings are "required when a suspect is subjected to a custodial interrogation." *Archanian v. State*, 122 Nev. 1019, 1038, 145 P.3d 1008, 1021 (2006). "'Custody' for *Miranda* purposes means a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Rosky*, 121 Nev. at 191, 111 P.3d at 695. "No such warning is necessary before reasonable questioning and administration of field sobriety tests at a normal roadside traffic stop." *Dixon v. State*, 103 Nev. 272, 274, 737 P.2d 1162, 1164 (1987) (citing *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)). An officer's "modest number of questions" and request to perform a field sobriety test "cannot fairly be characterized as" custody requiring a *Miranda* warning. *Berkemer*, 468 U.S. at 442. An officer's "unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.*; *see also Stansbury v. California*, 511 U.S. 318, 323 (1994) (explaining that whether a suspect is in custody "depends on the objective

SUPREME COURT
OF
NEVADA

(0) 1947A

circumstances of the interrogation, not on the [officer's or suspect's] subjective views").

The district court concluded that Smith was not in custody until the trooper told him to exit his truck, so it excluded only the statements he made after that point. Citing *Dixon*, *Berkemer*, and *Stansbury*, it reasoned that the first officer merely detained Smith when he stopped and questioned him, and that the officer's subjective intent in doing so—whether for the DUI or the hit-and-run—was irrelevant. And it reasoned that the second officer did not transform the detention into custody. It found that he merely repeated the first officer's questions and then waited for the trooper to arrive, and did not tell Smith to exit his truck or otherwise "exhibit control beyond a normal traffic stop." Although the district court did not address it, the record does not show and neither party claims that either officer asked Smith to submit to a field sobriety test.

The district court was correct that Smith was not in custody until the trooper told him to exit his truck. As Smith concedes, caselaw is clear that a routine traffic stop generally does not constitute custody, and the only thing that he argues elevated his detention to custody is the two officers' subjective intent. But as the district court concluded, custody presents an *objective* question, so whether the officers knew that the traffic stop would probably end in Smith's arrest for the hit-and-run is irrelevant. *Berkemer*, 468 U.S. at 442. The only relevant question was whether a reasonable person in Smith's position would have understood himself to be in custody, and the record contains no indication that he would have. Further, neither of the two officers asked Smith to submit to a field sobriety test, even *the administration of which* we have held does not independently create an objective sense of custody in a reasonable person. *Dixon*, 103 Nev.

at 274, 737 P.2d at 1164. We conclude that Smith was not in custody before the trooper told him to exit his vehicle, and the district court did not err by denying his motion to suppress the statements that he made before that point. Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. Lynne K. Simons, District Judge
       Washoe County Public Defender
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk